SANTA CLARA VALLEY DISTRIBUTING CO., INC., et al., Plaintiffs-Appellants,

v.

PABST BREWING COMPANY, Defendant-Appellee.

No. 75–1513.

United States Court of Appeals, Ninth Circuit.

June 29, 1977.

---

J. Albert Hutchinson (argued), San Francisco, Cal., for plaintiffs-appellants.

James R. Madison (argued), Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., for defendant-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and BONSAL,* District Judge.

PER CURIAM:

Plaintiffs appeal the trial court's grant of defendant's motion for a directed verdict. Fed.R.Civ.P. 50(a). We affirm.

Plaintiffs Santa Clara Valley Distributing Co., Inc. and Bert G. Gianelli are wholesale distributors for various brands of beer in California. Defendant Pabst Brewing Company (Pabst) is a manufacturer and seller of beer. Plaintiffs have written distributorship agreements with Pabst to wholesale its products.

Of the plethora of antitrust claims raised in plaintiffs' original and amended complaints, only two theories were reserved for trial:

(1) Did defendant combine or conspire during the period before October 29, 1971 to fix the prices at which plaintiffs sell Pabst beer to retailers in violation of section 1 of the Sherman Act [15 U.S.C. § 1]?

(2) Did defendant combine or conspire during the period before October 29, 1971 to prohibit plaintiffs from selling Pabst beer to chain store retailers in violation of section 1 of the Sherman Act?

---

* Honorable Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

At the close of plaintiffs' case, Pabst moved for, and was granted, a directed verdict on both of these issues. In a well-reasoned exposition, the district court held that, even when viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could find that Pabst had coerced them into accepting the alleged vertical price and customer/territorial restraints. *See Brady v. Southern Ry.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 88 L.Ed. 239 (1943); *Shafer v. Mountain States Telephone & Telegraph Co.*, 335 F.2d 932, 934 (9th Cir. 1964); 5A J. Moore, Moore's Federal Practice ¶ 50.02[1], at

2325–27 (2d ed. 1976). This standard also governs our approach on review. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696–97 & n.6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), *quoting* Moore, *supra. See Calnetics. Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 684 (9th Cir.), cert. denied, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); *Robinson v. Cupples Container Co.*, 513 F.2d 1274, 1277 (9th Cir. 1975); *Guam Fed'n of Teachers, Local 1581, A.F.T. v. Ysrael*, 492 F.2d 438, 439 (9th Cir.), cert. denied, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974).[1] We agree

---

1. It is presently unclear whether the admonition of the Supreme Court in *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), to use summary proceedings "sparingly" in complex antitrust cases applies to Rule 50(a) motions for directed verdicts, as well as to Rule 12(b)(6) motions to dismiss for failure to state a claim and Rule 56 motions for summary judgment. While it is clear that the latter two pretrial motions are to be used cautiously in such cases, *see Hospital Building Co. v. Rex Hospital Trustees*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir. 1977); *Timberlane Lbr. Co. v. Bank of America, N.T. & S.A.*, 549 F.2d 597, 602–03 (9th Cir. 1976); *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 280 (9th Cir. 1976), a review of both the policy concerns voiced by the Court in *Poller* and the Court's subsequent opinion in *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), would seem to lead to the conclusion that the same circumspection is not required in the case of directed verdicts.

In *Poller*, the Court gave the following reasons for its rule:

> We look at the record on summary judgment in the light most favorable to Poller, the party opposing the motion, and conclude here that it should not have been granted. We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice."

368 U.S. at 473, 82 S.Ct. at 491 (footnote omitted). It would seem that, save for the desirabil-

ity of having the jury decide the issues, none of these policy concerns applies to the granting of a directed verdict after the plaintiffs presumably have had a full opportunity for discovery and presentation of their case. And, by definition, a directed verdict is only granted when no reasonable jury could find for the nonmoving party. *See Fortner Enterprises, Inc. v. United States Steel Corp.*, 452 F.2d 1095, 1097–98 n.3 (6th Cir. 1971) (noting distinction), cert. denied, 406 U.S. 919, 92 S.Ct. 1773, 32 L.Ed.2d 119 (1972).

Moreover, in *Union Carbide, supra*, a case decided just four months after *Poller*, the Court held that the general statement of the standard for directed verdicts also "governs in ruling upon motions for directed verdict in treble damage suits under the antitrust laws." 370 U.S. at 696–97 n.6, 82 S.Ct. at 1409. Only a "*Cf.*" citation to the then recently-decided case of *Poller* was included. *See Adickes v. Kress & Co.*, 398 U.S. 144, 175–78, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (Black, J., concurring) (applying *Poller* rule to partial summary judgment, but not to directed verdict on another issue in same case); *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 683–86 (9th Cir.) (same), cert. denied, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). *See also National Gas Appliance Corp. v. Manitowoc Co.*, 311 F.2d 896, 900 (7th Cir. 1962).

Thus, although we have at times assumed that the *Poller* admonition applies to directed verdicts, *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 427 (9th Cir. 1975); *Chisholm Bros. Farm Equip. Co. v. International Harv. Co.*, 498 F.2d 1137, 1139–40 (9th Cir.), cert. denied, 419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 298 (1974); *Cornwell Quality Tools Co. v. C. T. S. Co.*, 446 F.2d 825, 832 (9th Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 715, 30 L.Ed.2d 740 (1972), the cases in which we have done so contain neither an analysis of the policy considerations underlying the *Poller* rule nor a citation to the above-quoted passage from *Union Carbide*. In any event, of course, we have recognized that a directed verdict is proper, even in an antitrust case, when "there is no substantial evidence to

with the district court that, on the basis of plaintiffs' own pleadings and stipulations, as well as the documents and testimony offered by them, defendant Pabst was clearly entitled to a directed verdict.[2]

 Both here and below, plaintiffs have characterized the two antitrust theories reserved for trial as alleging vertical conspiracies between themselves and Pabst. As such, each theory required that plaintiffs show the requisite degree of enforcement coercion by Pabst. *See Knutson v. Daily Review, Inc.*, 548 F.2d 795, 806–10 (9th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977); *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1355–57 (9th Cir. 1976), *cert denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). As to the vertical price fixing claim, however, plaintiffs themselves clearly testified that Pabst had never forced them to adhere to its "suggested" prices, either through direct communication of threats or by example through termination or other discipline of distributors who failed to comply. Indeed, plaintiffs testified that they at all times felt free to follow Pabst's "promotional campaigns" or not as they pleased and that, when they did choose not to "post-down" as Pabst had recommended, there was no indication of displeasure by Pabst which, by plaintiffs' own admissions, was "wonderful" to do business with.[3]

Similarly, the distributorship agreements themselves clearly state that, although plaintiffs were assigned areas of "primary responsibility" by Pabst, they were free to sell wherever and to whomever they chose. Moreover, since plaintiffs admitted to never having read the agreements, they could not claim to have somehow been misled by their contents. Nor could plaintiffs point to any instance in which Pabst had threatened reprisal when one of them attempted to sell outside of its area—for neither plaintiff had ever attempted to do so, admitting that such sales would not, in any event, be economically feasible.[4]

 Finally, it seems that the crux of plaintiffs' dissatisfaction is that Pabst allegedly deals with another beer distributor, Beverage Distributors, Inc. (BDI), on more favorable terms than with plaintiffs. They contend that such advantages enable BDI to compete successfully for the lucrative retail chain store business through the "central warehouse" marketing technique. Plaintiffs' briefs make numerous, vague references to claims that Pabst forced them to accept a full line of Pabst products in

support the claim." *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975), quoting *Cleary v. Nat'l Distillers and Chemical Corp.*, 505 F.2d 695, 696 (9th Cir. 1974). This is such a case.

2. Our conclusion that the district court was correct in directing a verdict for defendant Pabst obviates the need to decide whether the district court abused its discretion in failing to certify a class composed of all of Pabst's California distributors.

3. The district court also noted that, although plaintiffs alleged two types of vertical conspiracies between Pabst and themselves, they expressly denied having entered into any agreement with Pabst to restrict price or customer/territorial competition. Since there is, of course, a plurality requirement for any such conspiracy claim, *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 625 (9th Cir. 1977), plaintiffs' admissions alone might be a sufficient basis on which to direct a verdict against them. *See Chisholm Bros. Farm Equip. Co. v. International Harv. Co.*, 498 F.2d 1137, 1140 & n.6 (9th Cir.), *cert. denied,*

419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 298 (1974). In denying their co-conspirator status, plaintiffs apparently failed to recognize that proof of the requisite economic coercion by Pabst would clearly have enabled them to overcome any *in pari delicto* defense raised by Pabst. *See Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 278 & n. 2 (9th Cir. 1976). In any event, it is the absence of such coercion on which the district court principally relied in directing a verdict in favor of Pabst, and we do likewise.

4. The district court seemed to feel that, if there were any customer/territorial restraints at work in the beer distribution system, they were imposed by the distributors themselves out of a traditional respect for one another's territory. We, of course, express no opinion on the existence of such a horizontal conspiracy among the distributors. The theory was never advanced by plaintiffs, and no fellow distributors were named by them as defendants. *Compare Knutson, supra* at 810.

violation of the proscription against illegal tying arrangements while BDI was not so restricted (though plaintiffs stipulated before trial that Pabst did not require them to take a full line); that Pabst, BDI, and certain large retail chains conspired to boycott plaintiffs (though plaintiffs cite no "boycott" cases and neither BDI nor any of the chain stores was named as a defendant); and that, regardless of the presence of such a tying arrangement or such a conspiracy, Pabst violated the antitrust laws by allegedly refusing to deal with plaintiffs and BDI on nondiscriminatory terms. *See generally Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d 620, 626–27 (9th Cir. 1977); *Moore v. Jas. H. Matthews & Co.,* 550 F.2d 1207 (9th Cir. 1977). Since these theories were neither reserved for trial nor developed below or here, they are not now properly before us. *See Knutson, supra* at 804 n.8; *Moore v. Great Western Savings & Loan Ass'n,* 513 F.2d 688, 691 (9th Cir. 1975); *Eason v. Dickson,* 390 F.2d 585, 589 (9th Cir.), *cert. denied,* 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968).

AFFIRMED.