FILCO, a California partnership, Anton J. Saca, Ilham Saca, Rose M. Karadsheh, and Nahil Altenhofen, Plaintiffs-Appellants,

v.

AMANA REFRIGERATION, INC., a Delaware corporation; Lamco Appliance, Inc., a California corporation and Boulevard T.V. & Appliance, Inc., a California corporation, Defendants-Appellees.

No. 81–4604.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1982.

Decided June 10, 1983.

---

Joseph E. Burke, Burke & Sharpe, Sacramento, Cal., Mario N. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiffs-appellants.

Stephen J. Holtman, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, Iowa, Carole Hogan, Hardy, Erick & Brown, Robert H. Johnson, Johnson & Hoffman, Sacramento, Cal., for defendants-appellees.

Before MERRILL, WALLACE, and NELSON, Circuit Judges.

WALLACE, Circuit Judge:

Filco sued alleging that Amana Refrigeration, Inc. (Amana), Boulevard T.V. & Appliance, Inc. (Boulevard) and Lamco Appliance, Inc. (Lamco) conspired to fix prices in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and California's Cartwright Act, Cal.Bus. & Prof.Code § 16720 (West 1964). Filco also asserted five other state law claims against Amana. The district court dismissed these latter claims after granting a motion for summary judgment on the Sherman Act and Cartwright Act claims. Filco appeals only from the summary judgment. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I

Amana manufactures and sells appliances throughout the United States. Filco is a partnership which owns a discount store in Sacramento, California. In 1974, Karadsheh, a partner and the manager of Filco, began ordering Amana products from Dusa, Amana's field representative. Filco claims, and Amana denies, that Filco became an official Amana dealer in January 1976. A retailer need not be an authorized dealer to receive merchandise from Amana. Regard-

less of whether it ever became an official dealer, Filco ordered Amana products from Dusa until his death in March 1976. In the following seven months, business between Filco and Amana apparently slowed but Filco continued to order products directly from Amana.

In October 1976, Amana sent Casimir, its new Sacramento representative, to solicit an order from Filco. Although what occurred at this meeting is substantially in conflict, all agree that despite Casimir's irritation with the presence of representatives of rival manufacturers, he initially took an order from Karadsheh for Amana products. When one of the other representatives began to mimic him, however, Casimir allegedly tore up the order and stormed out of the store. Amana's version differs only in that it claims that Casimir canceled the order because he was directed to leave the store by Karadsheh. Filco's Saca later telephoned Casimir's superiors in an effort to ameliorate the dispute, but was informed that Amana would stand by Casimir's refusal to sell products to Filco. Although the argument between Casimir and Karadsheh severed direct relations between Filco and Amana, Filco has continued to order Amana products from a dealer in Southern California.

Filco claims that it was terminated because of complaints made to Amana by two of its competitors, Lamco and Boulevard, concerning Filco's discount pricing policies. The record supports a finding that Coppin, the owner of Lamco, made such a complaint, but no such finding can be made as to Boulevard's owner, Rich. Both Casimir and his supervisor admit that Amana was aware of dealer complaints about Filco's discounting practices.

In his deposition, Karadsheh testified that Casimir told him "I don't want Amana to be discounted. I don't want to make a K-Mart out of Amana, you know, with the low prices." Karadsheh also testified that Casimir stated: "If you want to have Amana, you have to do so and so. You have to

maintain the price. You cannot discount it."

## II

If no material facts are disputed, we view the record in the light most favorable to the party opposing the motion for summary judgment and determine whether the movant is entitled to prevail as a matter of law. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir.1980). We consider only alleged facts that would be admissible in evidence. Fed.R.Civ.P. 56(e).

Of course, "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles ...." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Chisholm Brothers Farm Equipment Co. v. International Harvester Co.,* 498 F.2d 1137, 1139 (9th Cir.), *cert. denied,* 419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 298 (1974) (*Chisholm Brothers*). Nevertheless, if there is no genuine issue of material fact, and if the resisting party does not present a record sufficient to support a reasonable finding in his favor, a district court has a duty to grant the motion for summary judgment. *Cf.* 498 F.2d at 1139–40 (directed verdict).

Distributors terminated due to competitor complaints have provided a considerable amount of recent litigation, as well as scholarly commentary. *See, e.g.,* Piraino, *Distributor Terminations Pursuant to Conspiracies Among a Supplier and Complaining Distributors: A Suggested Antitrust Analysis,* 67 Cornell L.Rev. 297 (1982); Note, *Vertical Agreements to Terminate Competing Distributors: Oreck Corp. v. Whirlpool Corp.,* 92 Harv.L.Rev. 1160 (1979); Note, *Vertical Agreement as Horizontal Restraint: Cernuto, Inc. v. United Cabinet Corp.,* 128 U.Pa.L.Rev. 622 (1980). In the case before us, our focus is relatively narrow. The complaints to Amana concerned Filco's pricing practices and Filco alleges that this was the reason it was terminated. Therefore, the per se rule [1] is implicated.

---

1. "[T]here are certain agreements or practices    which because of their pernicious effect on

*Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 51 n. 18, 97 S.Ct. 2549, 2558 n. 18, 53 L.Ed.2d 568 (1977) (dictum); *United States v. Parke, Davis & Co.,* 362 U.S. 29, 46–47, 80 S.Ct. 503, 512–513, 4 L.Ed.2d 505 (1960); *Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373, 407–08, 31 S.Ct. 376, 384, 55 L.Ed. 502 (1911); *see also California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 102, 100 S.Ct. 937, 941, 63 L.Ed.2d 233 (1980) (dictum). Before we can apply the per se rule, however, we must first determine whether there is sufficient evidence to establish a combination or conspiracy.

■ Section 1 of the Sherman Act provides that any "combination . . . or conspiracy, in restraint of trade . . ." is illegal. 15 U.S.C. § 1. This phrase has been roughly translated to mean that a plaintiff must prove that a defendant engaged in "concerted action." L. Sullivan, *Handbook of the Law of Antitrust* § 109 (1977). Thus, in a case like the one before us, a plaintiff cannot overcome a motion for summary judgment without alleging sufficient facts to raise a reasonable inference of an illegal combination or conspiracy. Filco advances three theories of concerted action: a vertical conspiracy to fix prices between Lamco, Boulevard and Amana; an *Albrecht* conspiracy on the part of Amana to fix prices; and a horizontal conspiracy to fix prices between Lamco and Boulevard. We will examine each of these three theories in order.

### A.

■ In *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919) (*Colgate*), the Court held that absent monopolistic purpose, a unilateral decision to refuse to deal with another company in the vertical chain of distribution is not actionable under the Sherman Act. Therefore, a manufacturer may announce legally that it will refuse to deal with anyone who

competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the

does not adhere to its suggested price schedule. *Id.* at 307, 39 S.Ct. at 468. Pursuant to the *Colgate* doctrine, courts have generally required more proof of concerted action to fix prices on the vertical level than on the horizontal level. Sullivan, *supra,* § 139; *see Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 111 n. 2 (3d Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981) (*Edward J. Sweeney & Sons*), *citing* P. Areeda, *Anti-Trust Analysis* 560 (2d ed. 1974).

■ However, an overt act by a manufacturer, in addition to a unilateral refusal to deal, may be actionable. *United States v. Bausch & Lomb Optical Co.,* 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944); *Federal Trade Commission v. Beech-Nut Packing Co.,* 257 U.S. 441, 447–53, 42 S.Ct. 150, 152–154, 66 L.Ed. 307 (1922). Filco relies especially on *United States v. Parke, Davis & Co.* In that case, Parke, Davis advised wholesalers and retailers that they must respect price floors. Wholesalers were used to detect violators at the retail level. Once a violation of its policy was detected, Parke, Davis would summon the noncomplying retailer and induce him to adhere to a price level. It would then use the first retailer's compliance to ensure the compliance of a second retailer. 362 U.S. at 33–36, 80 S.Ct. at 506–507. The Court wrote that a combination exists if "the producer secures adherence to his suggested prices by means which go beyond his mere declination to sell to a customer who will not observe his announced policy." *Id.* at 43, 80 S.Ct. at 511.

The crucial questions in the case before us are whether a jury may reasonably infer an illegal combination merely from competitors' complaints to a manufacturer and subsequent termination of the discounter, and, if not, what more is needed to overcome a summary judgment motion. The general rule in other circuits is that a jury may not infer a conspiracy from competitor

business excuse for their use." *Northern Pacific Railway v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

complaints plus termination alone. *Battle v. Lubrizol Corp.,* 673 F.2d 984, 991 (8th Cir.), *reh'g and reh'g en banc granted,* (May 21, 1982) (*Battle*); *Roesch, Inc. v. Star Cooler Corp.,* 671 F.2d 1168, 1172 (8th Cir.), *reh'g and reh'g en banc granted,* (May 21, 1982); *H.L. Moore Drug Exchange v. Eli Lilly & Co.,* 662 F.2d 935, 941 (2d Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982) (*Moore*); *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 80 (2d Cir. 1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981); *Edward J. Sweeney & Sons,* 637 F.2d at 111. Filco argues that the better rule is expressed in *Battle,* 673 F.2d at 991, and *Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1238–39 (7th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983) (*Spray-Rite*). Both *Battle* and *Spray-Rite,* however, expressly required sufficient evidence to show that the termination was *in response to* complaints by competitors. *Battle,* 673 F.2d at 991–92; *Spray-Rite,* 684 F.2d at 1238–39. Thus, those decisions required "evidence of a causal relationship between the competitor dealer's price-related complaints and the manufacturer's action." *Battle,* 673 F.2d at 992.

No case has been cited to us in which we have determined whether distributor terminations following complaints by competitors is sufficient to show the necessary illegal combination. Filco relies upon *Girardi v. Gates Rubber Co. Sales Division, Inc.,* 325 F.2d 196 (9th Cir.1963) (*Girardi*), in which a competing distributor complained about Girardi's discounting practice to the manufacturer, Gates. We ruled that Girardi had produced enough evidence to overcome the motion for summary judgment. We stated:

> It is quite clear from what we have previously noted that Oranges [a competitor], and perhaps some other jobbers as well, complained to Gates about Girardi's price cutting. If Oranges complained, it would be a fair inference that his complaint was designed to get some action on the part of Gates. The very act of complaining carries the meaning: "I want you to do something about it."

*Id.* at 202. Despite this language, we relied on several facts which established that Gates actively attempted to control prices by refusing to deal with discounters. First, Gates had threatened to cancel Girardi in 30 days if he did not discontinue his discounting practices. *Id.* at 198. Second, two letters made it clear that competitors of Girardi had complained about his discounting policies, *id.* at 200–01, and that Gates's district manager desired to terminate Girardi. *Id.* at 203. Third, when Gates was subsequently considering whether to give a contract to a new distributor, the district manager explained to one of the complaining distributors that Gates would control the new distributor's market practice to avoid a "price eroding marketing policy." *Id.* at 202. Fourth, Girardi originally was terminated only in two geographical areas where he was discounting, but not in a third area where he was not, again implying a price support program. *Id.* at 197–98 & n. 3. Fifth, a letter showed that Girardi was finally terminated completely and denied new orders because of strong pressure exerted by competitors as a result of his discounting policies. *Id.* at 203. We held that this evidence could give rise to an inference of a price support program and a conspiracy between at least one of the distributors and the manufacturer. *Id.* at 203–04.

In several cases since *Girardi,* we have sustained decisions holding that insufficient evidence was presented in vertical price fixing cases in which the facts were less strong. These cases make it clear that a plaintiff may show there is a jury question by alleging sufficient evidence of both concerted action and attempted coercion to enforce price levels. *Chisholm Brothers,* 498 F.2d at 1140 n. 6; *accord General Cinema Corp. v. Buena Vista Distribution Co.,* 681 F.2d 594, 597 (9th Cir.1982); *Santa Clara Valley Distributing Co. v. Pabst Brewing Co.,* 556 F.2d 942, 945 (9th Cir.1977) (per curiam). For example, in *Chisholm Brothers,* we sustained the district court's order of a directed verdict because there was no systematic policy of refusing to deal with distributors who failed to comply with the

price schedule, no threats, and no evidence of distributors following prices as there was in *Girardi.* 498 F.2d at 1141.

We commented on the issue of customers' complaints in dicta in *Westinghouse Electric Corp. v. CX Processing Laboratories, Inc.,* 523 F.2d 668 (9th Cir.1975): "[a] combination violative of Section 1 of the Sherman Act cannot be implied from the fact that some of [the manufacturer's] customers complained of [a discounter's] practices, since it was the normal working of the marketplace for them to have done so." *Id.* at 675, *quoting Carbon Steel Products Corp. v. Alan Wood Steel Co.,* 289 F.Supp. 584, 588 (S.D.N.Y.1968); *see also Carr Electronics Corp. v. Sony Corp. of America,* 472 F.Supp. 9 (N.D.Cal.1979).

We conclude that competitor complaints plus termination is not sufficient evidence to raise an inference of unlawful conspiracy or combination. To rule otherwise would subject manufacturers to vexatious litigation because every terminated discounting distributor probably could point to complaints made by his competitors. Something more than complaints and termination must be shown to overcome a motion for summary judgment. We therefore must analyze the second question: what must Filco show in addition to overcome a motion for summary judgment? We hold that the additional showing can be made by either evidence of direct coercion or of a causal nexus between complaints and termination.

### 1.

Filco initially argues that the added requirement is met by evidence of overt coercion attempting to ensure compliance through threats or demands. *See Chisholm Brothers,* 498 F.2d at 1140 n. 6. Demands or threats, however, must be distinguished from mere "exposition, persuasion, argument, or pressure." *Yentsch v. Texaco, Inc.,* 630 F.2d 46, 53 (2d Cir.1980); *Chisholm Brothers,* 498 F.2d at 1142–43; *Gray v. Shell Oil Co.,* 469 F.2d 742, 748 (9th Cir. 1972), *cert. denied,* 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973).

Filco attempts to establish the added requirement by demonstrating overt coercion in two ways: first, by evidence of coercive behavior on the part of Amana in the Sacramento area, and second, by evidence of Amana's pricing practices throughout the United States. We first consider the evidence from the Sacramento area.

Filco admits that its strongest evidence is the testimony of Karadsheh concerning the meeting between him and Casimir in October 1976. Filco claims that Casimir threatened to terminate Filco if it continued to discount Amana products: "I don't want Amana to be discounted. I don't want to make a K-Mart out of Amana, you know, with the low prices.... If you want to have Amana, you have to do so and so. You have to maintain the price. You cannot discount it." The issue raised is whether these statements are enough to raise an inference of coercion and thus create an inference of illegal combination.

We conclude that this evidence is not sufficient to create such an inference. The statements must be analyzed in the context in which they were made. Casimir testified that in his earlier visits to Filco he had not been impressed with the facilities; in fact, he described Filco as a "catalog house." In his discussion with Karadsheh, he emphasized that Filco would have to take a full line of Amana products, and that it would be required to devote sufficient floor space to display the products. It was his exhortation to Karadsheh to display the products properly that was later mimicked by one of the rival representatives present at the meeting. Although pricing was also discussed, Casimir's main concern was that Filco provide the presale services that are required by all stores selling Amana products. In this context, a statement that Amana did not want Filco to discount its products does not raise a sufficient inference of a threat or a demand, or otherwise constitute sufficient coercion to create an inference of a violation of section 1 of the Sherman Act.

Filco also offers Dusa's statement to Karadsheh, and later to Saca, as evidence of a demand or threat: "try to keep it down as far as prices because I have Lamco on my back. You're my friends. I don't want to lose their account, you know." The very tone of this passage indicates no threat, but rather mere encouragement.

Filco also claims that there is evidence from outside the Sacramento area of a nationwide conspiracy between Amana and its dealers to fix prices. This evidence, contained in 23 exhibits, was excluded by the district court as irrelevant because it did not relate to price fixing and because it was too remote from the events in the Sacramento area. Filco argues that the evidence is admissible under *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962) (*Union Carbide*), and that it establishes the additional evidence necessary to complete a prima facie case of conspiracy among Amana, Boulevard and Lamco.

*Union Carbide* is not directly on point. Continental alleged that it had been forced out of the market by Union Carbide's monopolistic practices and pointed to five different ventures in which it had failed because, each time, Union Carbide had cut off its source of raw materials. The Supreme Court held that it was error for the trial court to examine the five ventures "*seriatim,*" as if they were "five completely separate and unrelated lawsuits." *Id.* at 698–99, 82 S.Ct. at 1409–1410. It further stated that "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Id.* at 699, 82 S.Ct. at 1410. Unlike Continental, Filco cannot claim that the excluded evidence relates to business activity that involved or affected it; rather it relates to other retailers in other parts of the country.

Even if *Union Carbide* is read expansively to allow evidence about events occurring in any part of the nation that may implicate Amana in a nationwide conspiracy, the district judge did not err in excluding the evidence in this case. The exhibits are nothing more than isolated memoranda involving Amana's attempts to deal with problems caused by transshipping. Filco argues that although this is a legitimate concern of a manufacturer, the jury should be allowed to determine whether this concern was merely a subterfuge to hide an attempt to establish fixed prices throughout the nation. It would not be reasonable, however, for a jury to infer such a conspiracy based solely on such insubstantial evidence. Thus, the district judge did not err in concluding that this evidence was irrelevant because it was not sufficiently related to a price fixing conspiracy.

Moreover, even if some of the memoranda are viewed as relating to potential price fixing, they are merely isolated incidents and do not amount to evidence of a nationwide pricing conspiracy. It is not unusual for an organization as large as Amana to receive complaints from its distributors about discounting competitors. This alone, however, cannot establish a nationwide conspiracy.

2.

Filco next contends that the added requirement is supplied in this case because its termination was in fact caused by competitors' complaints. As direct evidence of this causal link is ordinarily unavailable, circumstantial evidence becomes critical. Therefore, courts have looked at a variety of factors in assessing causation: the volume and intensity of complaints, *see, e.g., Spray-Rite,* 684 F.2d at 1239; *Moore,* 662 F.2d at 944; the time gap between receipt of complaints and termination, *see, e.g., Battle,* 673 F.2d at 992; *Moore,* 662 F.2d at 944; *Edward J. Sweeney & Sons,* 637 F.2d at 114; and whether the manufacturer had a valid, independent reason for terminating the discounting dealer. *See, e.g., Spray-Rite,* 684 F.2d at 1239 & n. 8; *Edward J. Sweeney & Sons,* 637 F.2d at 113–14. *But see Battle,* 673 F.2d at 992 (question of independent reason is for the jury); *Moore,* 662 F.2d at 943 (other reasons to terminate "makes it neither more or less probable that

[the manufacturer] acted in concert with others rather than unilaterally").

Although none of these factors alone would be strong evidence of illegal concerted action, a combination of them could provide the necessary nexus between complaints and termination and at least allow the plaintiff to present his case to the jury. In contrast, resolution of some of these questions in favor of the defendant would probably indicate that a reasonable inference of conspiracy is not possible. Courts must balance their duty to protect manufacturers or suppliers from vexatious litigation with their responsibility not to usurp the jury's function as factfinder.[2]

It is clear in this case that there were complaints about Filco's discounting practices. Casimir testified, however, that these complaints were merely the type typically made by competing dealers, and that they had no influence on his behavior toward Filco. Filco, on the other hand, points to testimony of Mrs. Dusa, the widow of the first Amana representative, that Amana received voluminous and virulent complaints about Filco.

Mrs. Dusa's testimony is based on conversations she had with her husband concerning telephone conversations he had with representatives of Lamco, Boulevard and Amana, indicating that the distributors were upset with Filco's pricing policies. Besides being based on multiple hearsay, Mrs. Dusa's testimony is weak because she could not remember any specifics, but testified only to vague impressions and memories of conversations. She also testified that the conversations had no effect on her husband's decision whether or not to retain Filco as a dealer. At best, her testimony, if admissible, implies that distributors objected to Filco's pricing policies and that this made Filco less desirable as an Amana retailer. Her testimony provides no support for a link between the complaints and a subsequent termination by Amana seven months after her husband died. Indeed, the long time gap, at least seven to nine months, between the time dealers first complained to Dusa and the time that Filco was terminated suggests that Filco's termination was not caused by the complaints.

Filco's argument is further refuted by Amana's sending a new dealer representative to take an order from Filco, long after the receipt of the complaints, and even though that representative believed that Filco was not a franchised dealer. Filco claims that Amana never intended to keep it as a dealer and that the visit to Filco was not made in good faith, but the uncontradicted evidence is to the contrary.

Filco also cites evidence that Amana was happy to be rid of Filco, and that this was partially due to Amana's displeasure over Filco's pricing policies. Again, this evidence is not probative because under *Colgate* Amana, acting unilaterally, is free to discontinue supplying products to Filco for any reason it wants, including Filco's discounting practices.

---

**2.** In analyzing the added requirement, we do not accept Amana's invitation to embrace the language in *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 110 (3d Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981) (*Edward J. Sweeney & Sons*), indicating that it is not enough for a plaintiff to show a causal relationship between complaints and termination. Such a rule seems to contradict the Supreme Court cases which forbid policing activities on the part of manufacturers. We see no significant difference between a manufacturer who engages distributors to help police a pricing system and a manufacturer who terminates discounters in response to complaints from distributors. Furthermore, we think the *Edward J. Sweeney & Sons* standard goes beyond what courts generally have required of plaintiffs to overcome a motion for summary judgment in cases involving distributor complaints. *See id.* at 123–25 (Sloviter, J., dissenting).

Amana argues that we should adopt a stricter standard because a manufacturer should be allowed to terminate a discounting distributor if the manufacturer is merely trying to eliminate a free rider problem. The short and conclusive answer to that contention is that the Supreme Court rejected the "free rider" argument in the price fixing area when it decided to retain the per se rule in cases of resale price maintenance and vertical price fixing. *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 51 n. 18, 97 S.Ct. 2549, 2558 n. 18, 53 L.Ed.2d 568 (1977).

██ Finally, it is very significant that there is no evidence that either Filco or the other retailers adhered to Amana's price guidelines. Casimir, Rich and Coppin testified that Lamco, Boulevard and other retailers generally did not follow the suggested prices. The only evidence Filco can point to is the hearsay statement from Dusa to Karadsheh that representatives from Lamco and Boulevard had told him that they were adhering to Amana's suggested prices. This evidence, however, was properly ruled inadmissible. In addition, Karadsheh's partner, Saca, admitted that Boulevard, Lamco and Filco all priced at competitive levels, below Amana's suggested retail prices. Although Filco may have discounted to a greater extent than did Boulevard and Lamco, the record indicates that all the dealers discounted Amana's products.

██ We conclude that Filco has failed to establish, in addition to competitor complaints and termination, sufficient evidence of either direct coercion or of a causal nexus between the complaints and termination to raise a reasonable inference of an illegal combination.

### B.

██ Filco's next theory is that Amana independently coerced Filco into adhering to a price schedule and that Filco acquiesced. If Filco could prove this, a conspiracy would be established. Under *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) (*Albrecht*), acquiescence by a retailer makes it the second party to the conspiracy. *See id.* at 150 n. 6, 88 S.Ct. at 872 n. 6 (dicta); *Chisholm Brothers*, 498 F.2d at 1140 n. 6 (dicta).

In applying this *Albrecht* theory, we have held that the plaintiff must establish two elements: (1) that defendant pressured plaintiff into maintaining prices at a certain level, and (2) that this coercion actually impinged upon plaintiff's freedom to set prices. *Id.* at 1140–43 & 1140 n. 6; *see also Santa Clara Valley Distributing Co. v. Pabst Brewing Co.*, 556 F.2d at 945; *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1355–57 & nn. 3–4 (9th Cir.1976), *cert. denied*, 429

U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). The second element will usually be shown by proving that the plaintiff did in fact maintain the suggested prices. *Hanson v. Shell Oil Co.*, 541 F.2d at 1357 & nn. 3–4; *Chisholm Brothers*, 498 F.2d at 1140 n. 6.

██ There is insufficient evidence to raise a genuine issue of material fact regarding coercion on Amana's part, although Amana may have expressed displeasure with Filco's activities. Indeed, there is little evidence that Filco acquiesced in Amana's demands. Although Karadsheh testified that Filco usually adhered to the suggested prices, his testimony is contradicted by Saca who testified that Filco sold at discount prices.

Moreover, Filco is arguing contradictory theories. To prove a vertical conspiracy to fix prices, Filco argued that it was terminated because it refused to maintain Amana's suggested prices. Under the *Albrecht* theory, it now argues that it acquiesced in Amana's demands. The two theories are mutually exclusive. The evidence shows, and Filco admits, that it did not acquiesce in Amana's pricing demands. Therefore, Filco fails to establish an *Albrecht* conspiracy.

### C.

██ Filco's third theory is that the two retailers, Lamco and Boulevard, conspired to set prices at the retail level by adhering to Amana's suggested retail prices. Courts often will apply a lesser standard for plaintiffs to meet in establishing a horizontal combination, since the *Colgate* rule does not apply to such combinations. Sullivan, *supra*, §§ 110–11, 139. Nevertheless, even the "conscious parallelism" cases illustrate that a complex pattern of behavior on the part of defendants must be shown in order to infer an agreement. *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610 (1939); *see also United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948); *American Tobacco Co. v. United States*, 328

U.S. 781, 809–10, 66 S.Ct. 1125, 1138–1139, 90 L.Ed. 1575 (1946) (discussing conspiracy to monopolize). Moreover, in this circuit it has long been the rule that conscious parallelism alone is insufficient to establish an inference of conspiracy. *Syufy Enterprises v. National General Theatres, Inc.,* 575 F.2d 233, 236 (9th Cir.1978), *cert. denied,* 439 U.S. 954, 99 S.Ct. 352, 58 L.Ed.2d 345 (1979); *C-O-Two Fire Equipment Co. v. United States,* 197 F.2d 489, 497 (9th Cir.), *cert. denied,* 344 U.S. 892, 73 S.Ct. 211, 97 L.Ed. 690 (1952).

In its attempt to prove a horizontal conspiracy, Filco points out that Coppin and Rich knew each other professionally and that price sheets were routinely mailed by Amana to distributors. As indicated earlier, however, there is no evidence that Lamco and Boulevard ever complied with Amana's suggested retail prices or otherwise priced at a fixed level. Thus, there is no evidence in the record that Lamco and Boulevard engaged in parallel behavior. There is no evidence that Boulevard complained about Filco's pricing. Even if there were and thus both competitors complained, the common practice of complaining about a discounting competitor is insufficient to establish an inference of horizontal conspiracy.

Filco's case is clearly based on its argument that Lamco and Boulevard were pricing at the same level. Even if this were sufficient, it has not been established, and there is thus insufficient evidence of a horizontal conspiracy.

### III

Filco objects to the exclusion of testimony by Karadsheh that Dusa told him that Lamco and Boulevard were adhering to Amana's suggested prices. Filco argues that this testimony is crucial because it establishes both a vertical conspiracy among the three defendants and a horizontal conspiracy between Boulevard and Lamco. The district judge ruled that the statement was inadmissible hearsay. Filco claims that the statement is an admission by a party and therefore admissible under Federal Rule of Evidence 801(d)(2).

The statement would be admissible to help prove the alleged horizontal conspiracy if it was being offered as an admission by Dusa concerning his own liability. However, to admit Dusa's statement to prove that Lamco and Boulevard were adhering to Amana's prices, Filco must prove that Dusa was a co-conspirator and that the statement was made in furtherance of a conspiracy. Fed.R.Evid. 801(d)(2)(E).

Hearsay statements by a co-conspirator are not admissible against a defendant unless there is independent evidence of the existence of a conspiracy and of the defendant's participation in the conspiracy. *United States v. Mason,* 658 F.2d 1263, 1269 (9th Cir.1981). The rule is not limited to criminal cases, but applies in civil cases as well. *See Schine Chain Theatres, Inc. v. United States,* 334 U.S. 110, 116–17, 68 S.Ct. 947, 951, 92 L.Ed. 1245 (1948); *Rutledge v. Electric Hose & Rubber Co.,* 327 F.Supp. 1267, 1274 (C.D.Cal.1971), *aff'd,* 511 F.2d 668 (9th Cir.1975).

Thus, Dusa's testimony would be admissible only if there were independent evidence of a conspiracy between Dusa, Lamco, and Boulevard. There is no such evidence; therefore, the statement is not admissible. Other statements allegedly made by Dusa, one that Coppin and Rich complained and another implying that Boulevard threatened to boycott Amana, were properly excluded by the district court as inadmissible hearsay for the same reason.

Similarly, the statements are inadmissible under the vertical conspiracy theory because there is a failure of independent evidence of such a conspiracy. We are persuaded by a recent Second Circuit case with facts very similar to those before us in which the court held that evidence was hearsay and not admissible due to the lack of independent evidence of a conspiracy. *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d at 80–81.

### IV

Filco last complains that the district court also erred in granting summary

judgment on Filco's state law claim under the California Cartwright Act, rather than merely entering a dismissal. If a federal claim is dismissed before trial, any pendent state matters usually should be dismissed as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Townsend v. Columbia Operations,* 667 F.2d 844, 850 (9th Cir.1982). In this case, however, Filco bases its state law claim on the same facts on which it bases its Sherman Act claim. The Cartwright Act, Cal.Bus. & Prof.Code § 16720(d) (West 1964), forbids price fixing by a "combination of capital, skill or acts by two or more persons . . . ." Cartwright Act claims raise basically the same issues as do Sherman Act claims. *See Milton v. Hudson Sales Corp.,* 152 Cal.App.2d 418, 439–41, 313 P.2d 936, 950 (1957). California cases illustrate that state courts follow federal decisional law in deciding claims under the Cartwright Act. *See, e.g., R.E. Spriggs Co. v. Adolph Coors Co.,* 94 Cal.App.3d 419, 425–26, 156 Cal. Rptr. 738, 741 (1979), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 758 (1980). Therefore, we affirm the district court's entry of summary judgment as to both the Sherman and the Cartwright Act claims.

AFFIRMED.