O.S.C. CORPORATION, also known as Olympic Sales Company; Consumer Computers; Advanced Computer Products; Custom Computer; Computer Specialties; and Micro Business World, Inc., Plaintiffs/Counterclaim, Defendants-Appellants,

v.

APPLE COMPUTER, INC., Defendant/Counterclaim, Plaintiff-Appellee.

ADVANCED COMPUTER PRODUCTS, Plaintiff/Counterclaim, Defendant-Appellant,

v.

APPLE COMPUTER, INC., Defendant/Counterclaim, Plaintiff-Appellee.

Nos. 85–5684, 85–5695.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1986.

Decided June 30, 1986.

Marc M. Seltzer, Corinblit, Shapero & Seltzer, Los Angeles, Cal., for plaintiffs/counterclaim, defendants-appellants.

Gary L. Reback, Fenwick, Stone, Davis & West, Palo Alto, Cal., for defendant/counterclaim, plaintiff-appellee.

Before KENNEDY, SKOPIL, and ALARCON, Circuit Judges.

SKOPIL, Circuit Judge:

These are antitrust actions brought against Apple Computer, Inc. ("Apple") by six retail dealers ("dealers") of personal computers. The dealers contend that Apple's ban on mail order sales violates section 1 of the Sherman Act, 15 U.S.C. § 1 (1982). The district court rejected the dealers' arguments that the ban was *per se* unlawful as a product of a price-fixing conspiracy. The court also rejected the dealers' alternative theory that the restraint was unlawful under a rule of reason analysis. We affirm the well-reasoned decision of the district court.

## FACTS AND PROCEEDINGS BELOW

Apple manufactures small computer systems that are marketed through a network of independent local retail outlets. Appellants are retail dealers of personal computers who specialize in mail order sales. These dealers contend that, as a result of their vigorous and aggressive mail order sales, other dealers complained to Apple of unfair price competition. Apple thereafter instituted a ban on mail order sales of its products. Dealers who continued to sell Apple products by mail were warned they would be terminated as authorized dealers.

Following discovery, Apple moved for summary judgment. The court initially denied the motion but on reconsideration granted the relief. *O.S.C. Corp. v. Apple Computer, Inc.*, 601 F.Supp. 1274 (C.D.Cal. 1985). The court held there was insufficient evidence to reasonably infer a price-fixing conspiracy. *Id.* at 1295. Further, the dealers failed to offer significantly probative evidence that Apple's mail order ban adversely affected competition. *Id.* at 1291 n. 8. Summary judgment was thus granted "on the ground that plaintiffs have not presented a record sufficient to support a reasonable finding in their favor." *Id.* at 1297.

## DISCUSSION

Our review is *de novo. Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). We

scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit "a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy." *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir.1985). "[I]f there is no genuine issue of material fact, and if the resisting party does not present a record sufficient to support a reasonable finding in his favor, a district court has a duty to grant the motion for summary judgment." *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1260 (9th Cir.), *cert. dismissed*, 464 U.S. 956, 104 S.Ct. 385, 78 L.Ed.2d 331 (1983).

▮▮▮ Section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), prohibits every "contract, combination ... or conspiracy" in restraint of interstate trade or commerce. Independent activity does not violate section 1. *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984). Only unreasonable or undue restraints are prohibited. *Standard Oil of New Jersey v. United States*, 221 U.S. 1, 58–60, 31 S.Ct. 502, 515–16, 55 L.Ed. 619 (1911). In *Standard Oil*, the Court applied a rule of reason in examining conduct of parties to determine section 1 violations. *Id.* at 60, 31 S.Ct. at 515. Unreasonableness is based on the nature of the contract or on the surrounding circumstances that give rise to an inference the parties intended to restrain trade or enhance prices. *National Society of Professional Engineers v. United States*, 435 U.S. 679, 690, 98 S.Ct. 1355, 1364, 55 L.Ed.2d 637 (1978) (footnote omitted).

▮▮▮ Certain restraints are so clearly anticompetitive they have been held to be unlawful *per se*. *See, e.g., United States v. Socony-Vacuum Oil Co., Inc.*, 310 U.S. 150, 218, 60 S.Ct. 811, 841, 84 L.Ed. 1129 (1940) (price-fixing). *Per se* unlawful activities include "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they

have caused or the business excuse for their use." *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

### A. Per Se Violation.

▮▮▮ Although unilateral action by a manufacturer in terminating a distributor is not usually subject to *per se* analysis, such action when taken in response to a competing distributor's complaint *and* with intent to restrain price competition may be a *per se* violation. *Zidell Explorations, Inc. v. Conval International, Ltd.*, 719 F.2d 1465, 1470–71 (9th Cir.1983). If a manufacturer deliberately withdraws its product from a price-cutting dealer at the request of a competing dealer as part of a conspiracy to price-fix, the manufacturer has joined in an unlawful restraint. *Id.* at 1469. It is appropriate to apply the *per se* rule when the manufacturer's primary motivation for its action is anticompetitive. *Id.* at 1471.

▮▮▮ Mere competitors' complaints plus termination of a noncomplying dealer are insufficient to raise an inference of unlawful conspiracy or combination. *Filco*, 709 F.2d at 1263. Rather, there must be evidence that tends to exclude the possibility of independent action by the manufacturer and distributor. *Monsanto*, 465 U.S. at 768, 104 S.Ct. at 1472. "That is, there must be direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.*

▮▮▮ We agree with the district court that the dealers' proffered evidence is insufficient to survive Apple's motion for summary judgment. Once allegations of conspiracy made in the complaint are rebutted by probative evidence supporting an alternative interpretation of a defendant's conduct, the plaintiff must come forward with specific factual support of its allegations of conspiracy. *Barnes*, 759 F.2d at 680; *Landmark Development Corp. v.*

*Chambers Corp.*, 752 F.2d 369, 371–72 (9th Cir.1985) (per curiam).

Apple met its burden by proffering "an entirely plausible and justifiable explanation of [its] conduct" that is "consistent with proper business practice." *Barnes*, 759 F.2d at 680 (quoting *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 672 (9th Cir.1980)). Apple contended and the district court agreed that the mail order prohibition was imposed to ensure Apple's products were sold only by face-to-face transactions. *O.S.C.*, 601 F.Supp. at 1281. Apple's marketing strategy requires sales support such as assessing the needs of prospective purchasers, assembling the particular package to meet those needs, hands-on instruction, education and training, and follow-up servicing. Mail order sales inherently cannot supply that necessary support.

The district court found that Apple's only concern with prices pertained to its dealers' capacity to withstand erosion of profit margins caused by having to carry "free riding" mail order dealers. *Id.* at 1287. Such a concern is both legitimate and lawful. See *Monsanto*, 465 U.S. at 762–63, 104 S.Ct. at 1470 (manufacturer may lawfully ensure that distributors earn sufficient profits to pay for product service programs and to "see that 'free riders' do not interfere"); *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 54–59, 97 S.Ct. 2549, 2559–62, 53 L.Ed.2d 568 (1977) (manufacturer can impose service and repair responsibilities on retailers, which because of "free rider" effect, retailers might not otherwise perform); *JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc.*, 698 F.2d 1011, 1015 (9th Cir.) (dealers more likely to promote or service product if not worried about other dealers taking a "free ride" on their efforts), *cert. denied*, 464 U.S. 829, 104 S.Ct. 106, 78 L.Ed.2d 109 (1983); *Computer Place, Inc. v. Hewlett-Packard Co.*, 607 F.Supp. 822, 830–31 (C.D. Cal.1984) (manufacturer's ban on mail order sale of computers was held justified by the manufacturer's concern over free riding by mail order dealers).

The dealers' evidence of a price-fixing conspiracy consisted of (1) complaints to Apple about mail order dealers' price discounts; (2) the outright and sudden elimination of mail order sales and termination of those dealers who continued such sales; (3) several meetings involving dealer and manufacturer representatives in which mail order discounting was allegedly raised; (4) a conversational statement by Apple's president that while he could not legally discuss pricing, something was going to be done about price erosion; (5) an incident in which Apple allegedly coerced mail order dealers to "get their prices up;" (6) Apple's alleged conditioning of new locations for mail order dealers upon their agreement to cease discounting; and (7) Apple's alleged agreement with one of the plaintiffs to not advertise prices. The district court reviewed all of these allegations, *O.S.C.*, 601 F.Supp. at 1287–89, and concluded there was insufficient evidence to support an inference of concerted action between Apple and its dealers, *id.* at 1295. We agree.

There is no dispute that Apple received voluminous complaints from its dealers on many issues, including mail order dealers and price discounters. Virtually every dealer, including appellants, submitted complaints to Apple. Such communication alone cannot support a finding of an antitrust conspiracy. *Monsanto*, 465 U.S. at 762, 104 S.Ct. at 1470; *Pumps & Power Co. v. Southern States Indus., Inc.*, 787 F.2d 1252, 1257 (8th Cir.1986). Further, both discounting and complaints continued after the mail order prohibition.

There is no dispute Apple instituted a mail order ban and thereafter terminated violaters. Nonetheless, complaints followed by termination are not enough to provide sufficient proof of an antitrust conspiracy. *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1470; *Pink Supply Co. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir.1986); *Filco*, 709 F.2d at 1263.

There was no evidence that price discounting was a formal topic of discussion at meetings attended by Apple representatives. In fact, the district court found that

Apple forbade discussion of price and mail order issues at Dealer Council meetings. *O.S.C.*, 601 F.Supp. at 1288. Apple's president's remark is entirely consistent with a manufacturer's right to invoke vertical non-price restraints that "ensure that its distributors earn sufficient profit to pay for [desired] programs." *Monsanto*, 465 U.S. at 762, 104 S.Ct. at 1470.

We agree with the district court that the remaining allegations lack substantial support in the record. There was no evidence Apple coerced dealers on advertising or pricing decisions. The dealers admitted that Apple's suggested retail prices were not binding. None of the appellants claim they were told to sell Apple products at any particular price. Dealers who were allegedly given new locations conditioned on advertising and pricing restrictions continued to advertise and to discount Apple products. Finally, the one dealer who claimed that Apple told him not to advertise prices nonetheless continued to do so. The district court found that Apple repeatedly informed that dealer orally and in writing that he could advertise prices. *Id.* at 1289.

The dealers failed to come forward with specific factual support to overcome Apple's asserted independent business justification. See *Barnes*, 759 F.2d at 681 (when there is a failure to produce substantial factual evidence to rebut an inference of lawful conduct, summary judgment is appropriate); *Landmark*, 752 F.2d at 372 (in light of strong legitimate business justification, plaintiff's evidence was too "highly ambiguous" to justify an inference of a conspiracy to fix prices). The evidence offered here by the dealers is arguably less substantial than evidence offered by plaintiffs in *Barnes*, 759 F.2d at 682–84 (letters, rate cutting, and meetings); *Landmark*, 752 F.2d at 372 (letters and complaints); *Filco*, 709 F.2d at 1263–66 (meeting, statements, complaints, and terminations); and *Computer Place*, 607 F.Supp. at 827–31 (complaints, termination, meetings, and telephone conversations). It would be inappropriate to imply concerted action or a price-fixing agreement from the ambiguous evidence provided by the dealers. See *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, —— U.S. ——, 106 S.Ct. 1348, 1362 n. 21, 89 L.Ed.2d 538 (1986).

## B. Rule of Reason.

The dealers alternatively argue that Apple's ban on mail order sales is a non-price restraint that is unlawful under a rule of reason analysis. Under such an analysis appellants must prove (1) an agreement among two or more persons or firms (2) which is intended to harm or unreasonably restrain competition and (3) which actually causes remediable injury to competition. See *Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.*, 710 F.2d 1366, 1373 (9th Cir.1983). In assessing appellants' proof, we consider whether the intent of the restraint is anticompetitive and whether the restraint has significant anticompetitive effects. *Betaseed, Inc. v. U and I, Inc.*, 681 F.2d 1203, 1228 (9th Cir.1982). Injury to an antitrust plaintiff is not enough to prove injury to competition. *Robert's Waikiki U–Drive, Inc. v. Budget Rent–A–Car Systems, Inc.*, 732 F.2d 1403, 1408 (9th Cir.1984); *Cascade Cabinet*, 710 F.2d at 1373.

The district court concluded that the dealers failed to show any actual adverse effect on competition. *O.S.C.*, 601 F.Supp. at 1291 n. 8. The evidence showed that competition was intense before and increased after the mail order ban was adopted. Apple increased the number of authorized dealers after the ban. Under these circumstances, the district court properly concluded a manufacturer such as Apple is free to impose a non-price restraint on a dealer so long as there is no pernicious economic effect on interbrand competition. See *Cascade Cabinet*, 710 F.2d at 1373; *A.H. Cox & Co. v. Star Machinery Co.*, 653 F.2d 1302, 1307 (9th Cir.1981).

Appellants also contend the mail order ban is unlawful because it eliminates a form of intrabrand competition. That ar-

gument was rejected by the Supreme Court in *Sylvania,* 433 U.S. at 54–59, 97 S.Ct. at 2559–62 (vertical restrictions may reduce intrabrand competition, but "redeeming virtues" of increased interbrand competition more than offset the loss).

AFFIRMED.