Albert SOUZA and Seiyei Matsuda, etc., Plaintiffs,

and

Valentine Merseberg and Ruth Chun, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

ESTATE OF Bernice Pauahi BISHOP, and its Trustees Frank E. Midkiff, Richard Lyman, Jr., Hung Wo Ching, et al., Defendants-Appellees.

No. 84–2641.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 25, 1986.

Decided Sept. 16, 1986.

Charles Wisch, Alvin H. Goldstein, Jr., Goldstein & Phillips, San Francisco, Cal., Thomas T. Watts, Kemper & Watts, Honolulu, Hawaii, for plaintiffs-appellants.

G. Richard Morry, David J. Reber, Martin Anderson, Honolulu, Hawaii, for defendants-appellees.

Before FERGUSON, CANBY and HALL, Circuit Judges.

CANBY, Circuit Judge:

Plaintiffs separately own two single family residences located on leased property owned by the Bishop Estate in Hawaii. In what appears to be a novel theory under the antitrust laws,[1] plaintiffs have alleged: that the Bishop Estate has unlawfully monopolized the market for leaseholds by im-

---

1. We assume for purposes of this opinion that the relevant sections of the antitrust laws apply to the situation before us. We question, however, whether Congress intended the antitrust laws to apply to the means by which a land-owner conveys all or a portion of his bundle of rights in real property. *See Souza v. Estate of Bishop*, 594 F.Supp. 1480, 1482 & n. 2 (D.Hawaii 1984).

posing a lease-only system on consumers of single family residences; that the Bishop Estate, the Castle defendants, and other major landowners in Hawaii have illegally conspired to restrain trade in the single family residential leasehold market in Honolulu's "urban corridor"; and that the Bishop Estate has unlawfully tied the sale of its leaseholds to sales of single family residences.

Plaintiffs appeal from the grant of summary judgment in favor of the defendants and from the denial of their motion for reconsideration of class certification. *Souza v. Estate of Bishop*, 594 F.Supp. 1480 (D.Hawaii 1984). We affirm the well-reasoned decision of the district court.

**FACTS:**

The Bishop Estate, the largest landowner in Hawaii, holds its property as a charitable educational trust for the children of Hawaii. The landholdings of the Castle defendants are also owned by trusts and by a tax-exempt Foundation, operated for religious, charitable, scientific and educational purposes.[2]

After World War II, the Bishop Estate sold some of its lands to developers. However, in the late 1950's the trustees became concerned about the potential loss of the Bishop Estate's charitable tax exemption due to direct development activities. The trustees also concluded that the Bishop Estate lacked the personnel and capital to develop residential lands. Consequently, the Bishop Estate turned to independent developers to whom it leased lands for subdivision and development. The developers, directly or through subdevelopers, planned, subdivided and improved the land and constructed and marketed single-family houses and leasehold lots. The Bishop Estate's financial participation in the developments was limited to receipt of a portion of the annual lease rents, although the Bishop Estate retained certain rights of approval over the development plan and a reversionary interest in the land and structures.

The Bishop Estate did not receive any part of the proceeds from the sales of the residences constructed on the leasehold lots.

The plaintiffs purchased single family homes and leasehold lots in a subdivision developed under a lease agreement between the Bishop Estate and American Factors, Ltd.

DISCUSSION:

I. Antitrust Claims.

We review the grant or denial of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party to decide whether there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. *See, e.g., Rickards v. Canine Eye Registration Foundation, Inc.*, 783 F.2d 1329, 1332 (9th Cir. 1986); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir.1980). The party opposing summary judgment has the burden of presenting specific probative evidence as to any fact claimed to be disputed. *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980). We find that plaintiffs have failed to carry their evidentiary burden to forestall summary judgment.

A. Conspiracy

Section one of the Sherman Act, 15 U.S.C. § 1, provides that every "conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

■ Plaintiffs have not offered any evidence of " 'a conscious commitment to a common scheme designed to achieve an unlawful objective.' " *Wilson v. Chronicle Broadcasting Co.*, 794 F.2d 1359, 1365 (9th Cir.1986) (quoting *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 111 (3d Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981) ). However, conspiracy cannot usually be es-

---

**2.** The only allegation in plaintiffs' complaint that applies to the Castle defendants is an allega-

tion of Sherman Act § 1 conspiracy.

tablished by direct proof. *Blair Foods, Inc.*, 610 F.2d at 671. Therefore, an antitrust plaintiff may rely upon circumstantial evidence from which a violation may be inferred. The evidence must tend "to exclude the possibility that the [defendants] were acting independently." *Wilson*, at 1365.

■ Plaintiffs here cite activities of the major landowners over several decades to support their allegation that the landowners conspired to restrain trade by leasing rather than selling their lands. Plaintiffs point to family and social relationships among the landowners. They also cite four meetings (May 1946, May 1954, September 1955, August 1967) attended by various landowners. Further, plaintiffs allege that the standardization of the land lease form and the existence of parallel leasing practices among the landowners support an inference of conspiracy.

The mere existence of parallel conduct or social contacts of the nature alleged here is insufficient to establish a conspiracy. *Wilson*, at 1365–1366. In addition, defendants have offered understandable and legitimate business reasons for their conduct. *See Blair Foods, Inc.*, 610 F.2d at 671–72. *See also O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1469 (9th Cir.1986). Defendants presented evidence to the effect that the decision to lease rather than to sell lands was economically motivated due to the unfavorable tax consequences that would be incurred if the charitable trust lands were sold. They point out that standardization of the lease occurred at the instigation of the FHA and VA, and that, prior to the standardization, lease terms varied among the landowners. In addition, there is evidence that land rents vary among the landowners. The Bishop Estate is also required by the terms of the trust not to sell the trust properties. Finally, the more recent of the landowners' meetings were for the purpose of influencing legislation. Thus, the defendants have presented evidence that their conduct was independently based on legitimate business reasons, and the district court did not err in

granting summary judgment in their favor on the conspiracy claim.

**B. Restraint of Trade**

■ Although the plaintiffs seem to allege that the long-term leases utilized by the Bishop Estate constitute contracts in restraint of trade, plaintiffs have not presented evidence on this issue, apart from the tying arrangement, to establish that "the long-term lease, in and of itself, created a barrier to the leasehold market." Because plaintiffs failed to present evidence establishing the existence of a genuine issue of material fact or even the nature of this claim, the district court properly granted summary judgment in favor of defendants.

**C. Tying**

Plaintiffs' tying claim alleges that the tying product is the single-family residence and that the tied product is the leasehold. Thus, plaintiffs' claim is distinguishable from the tying violation found by the Supreme Court in *Northern Pacific Railroad Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958) (tying of transportation services to lease or purchase of land).

■ Plaintiffs argue that the residence and the leasehold are separate products and are therefore subject to tying. Plaintiffs' argument defies reason; the product being marketed here was a house plus leased land not a house purchasable separately from the land on which it stands. *Cf. United States Steel Corp. v. Fortner Enterprises, Inc.*, 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977) (no antitrust violation where seller of prefabricated structures tied financing with favorable terms for purchase of land to purchase of structures). *See also Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).

The plaintiffs presented no evidence from which a reasonable juror could find that the house and the leased land constituted separate products, and the district

court therefore properly found that the house and land constituted a package or single product.

### D. Monopolization

 Plaintiffs allege that the Bishop Estate monopolizes the market for single-family residential leaseholds. The offense of monopolization (15 U.S.C. § 2) rests upon the willful acquisition or maintenance of monopoly power in the relevant market and the existence of actual injury to competition in that market. *See General Business Systems v. North American Philips Corp.*, 699 F.2d 965, 971–72 (9th Cir.1983) and cases cited therein. To establish anticompetitive market effect, plaintiffs must prove that the defendant's actions caused a decrease in competition in the relevant market.[3] *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.1983). Thus, even if disputed fact issues exist with respect to the actual motivation of the alleged monopolizer, those disputed facts are not material under the Sherman Act if the action complained of resulted in no injury to competition. *Mid-South Grizzlies v. National Football League*, 720 F.2d 772, 736 (3rd Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984). Plaintiffs presented no evidence to establish injury to competition.

 Plaintiffs do not contend that the Bishop Estate's mere ownership of the land constitutes an unlawful monopoly; they complain of monopolization of the market for residential leaseholds. A business that holds a lawful monopoly by virtue of ownership of a unique resource can be guilty of monopolization if it exploits its control over that resource by excluding its competitors at a different level from access to that essential resource. *Dart Drug Corp. v. Corning Glass Works*, 480 F.Supp. 1091, 1097–98 n. 9 (D.Md.1979) (citing *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973); *Poster Exchange, Inc. v. National Screen Service Corp.*, 431 F.2d 334 (5th Cir.1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811 (1971)). Two elements common to cases involving unique resources are (1) that the monopolist competes at another level with those foreclosed from access, and (2) that those foreclosed are thereby excluded from the market in which they would compete with the monopolist. *Id.* The Bishop Estate does not compete with plaintiffs on any level. Therefore, even if the Bishop Estate holds a "natural monopoly," plaintiffs have failed to state an antitrust claim. *See id. See also Shapiro v. General Motors Corp.*, 472 F.Supp. 636, 646–47 (D.Md.1979), *aff'd.* 636 F.2d 1214 (4th Cir.1980), *cert. denied*, 451 U.S. 909, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981).

Plaintiffs argue that the leased interests in the land are distinguishable from the land itself. That argument fails; indeed, it is difficult even to conceptualize. What plaintiffs are actually complaining about here is the means by which the Bishop Estate has chosen to transfer interests in its lands. Plaintiffs have not established that there is a market for the leases only— that someone would be willing to purchase a lease without the ability to use the land that is transferred as the leasehold.

The district court therefore correctly granted summary judgment in favor of the Bishop Estate on plaintiffs' monopolization claim.

### II. Class Certification

 The district court did not abuse its discretion by refusing to reconsider its denial of class certification. Plaintiffs first moved for class certification in April 1980. After discovery and extensive briefing, the district court denied certification because common issues of fact and law did not predominate and a class action did not offer a more fair and efficient way of handling the multiple claims of the proposed class members.

---

**3.** "Designation of the relevant market requires considerable judgment. Its dimensions include the product involved, the geographical limits within which it functions, and the appropriate time frame." *General Business Systems,* 699 F.2d at 973. *See also Wilson,* at 1364.

In March 1984, shortly before the deadline set for filing motions for summary judgment, plaintiffs renewed their request for class certification. The district court denied the renewed request for certification as untimely. Plaintiffs argue that the basis for the denial is "untenable" and the motion should be reconsidered on its merits. Plaintiffs have not favored us with the basis for their claim that the denial of the renewed request for certification as untimely is "untenable." The court had previously considered evidence and ruled on their motion for certification. The denial of the renewed request for certification is, therefore, affirmed.

AFFIRMED.