Thomas J. HENNEGAN and Gloria E. Hennegan, Plaintiffs,

v.

PACIFICO CREATIVE SERVICE, INC., dba Jalpak Reef Hotel; Micronesian Hospitality, Inc.; Ric Tours "Guam," Inc.; Yusen Air and Sea Service Pacific, Inc., dba Diamond Tours Guam; J.B. Siatong Enterprise, Inc., dba Guam Travel Bureau; Duty Free Shoppers, Ltd. and Hakubotan Enterprise, Inc., Defendants.

Civ. No. 83–0040.

United States District Court, D. Guam.

March 31, 1987.

**304**

Raymond C. Wagner, Agana, Guam, James K. Archibald, Pro Hac Vice, Venable, Baetjer and Howard, John O. Hennegan, Pro Hac Vice, Baltimore, Md., for plaintiffs.

Robert Schnabel, Gayle, Teker & Schnabel, P.C., Agana, Guam, for Pacifico Creative Service Inc., Micronesian Hospitality, Inc., Yusen Air and Sea Service Pacific, Inc.

Edward S. Terlaje, Law Offices of Edward S. Terlaje, Agana, Guam, for Ric Tours "Guam," Inc.

Timothy A. Stewart, Agana, Guam, for J.B. Siatong Enterprises, Inc. dba Guam Travel Bureau.

William J. Blair, Klemm, Blair, Sterling & Johnson, P.C., Agana, Guam, for Duty Free Shoppers, Ltd.

Jay Neil Fastow and Irving Scher, Pro Hac Vice, Weil, Gotshal & Manges, New York City, for Duty Free Shoppers, Ltd.

Richard A. Pipes, Carbullido & Pipes, Agana, Guam, for Hakubotan Enterprises, Inc.

## MEMORANDUM ORDER

DUENAS, District Judge.

This matter comes before this Court on defendants'[1] motion for judgment on the pleadings. Plaintiffs, Thomas J. and Gloria Hennegan, husband and wife (hereinafter the "Hennegans"), are park vendors who sell goods to Japanese tourists in Guam. Defendants consist of five tour operators and two retail stores in Guam whose businesses are aimed primarily at Japanese tourists.

The Hennegans allege that the retail shops pay the tour operators to bring groups of tourists to their stores by bus at pre-arranged times and encourage tourists to make purchases in violation of Section 2(c) of the Robinson–Patman Act, 15 U.S.C. § 13(c). Additionally, the Hennegans claim a violation of Section 3 of the Sherman Act, 15 U.S.C. § 3, alleging that the tour operators refuse to bring tourists to the Hennegan's park stand because the Hennegans refuse to pay the tour operators.

## PROCEDURAL BACKGROUND

The complaint in this matter was filed on June 14, 1983. On April 9, 1984, defendants filed a motion for summary judgment which was granted by Memorandum Order of this Court dated September 5, 1984. On appeal the United States Court of Appeals for the Ninth Circuit reversed, in part, this Court's order granting defendants summary judgment and remanded the matter to this Court for proceedings consistent therewith, 787 F.2d 1299 (1986). The Ninth Circuit thereafter denied defendants' petition for rehearing and the United States Supreme Court denied certiorari, — U.S. —, 107 S.Ct. 279, 93 L.Ed.2d 254, on October 14, 1986.

Defendants now come before this Court on motion for judgment on the pleadings. Oral arguments were heard and the matter was taken under advisement. By amended order dated December 23, 1986, this Court held that defendants' motion on the pleadings is granted and that a memorandum order would be issued. This memorandum order sets forth the basis for the granting of defendants' motion.

---

**1.** Duty Free Shoppers, Ltd., Hakubotan Enterprises, Inc., Siatong Enterprises, Inc., doing business as Guam Travel Bureau, Yusan Air and Sea Service Pacific, Inc., doing business as Diamond Tours Guam; Pacifico Creative Services, Inc., doing business as Jalpak; Micronesian Hospitality, Inc., and RIC Tours "Guam," Inc.

## ANALYSIS

### BURDEN OF PROOF

Rules 12(c) and 12(h)(2) of the Federal Rules of Civil Procedure permit the dismissal of a complaint, after the pleadings are closed, for failure to state a claim upon which relief can be granted. *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir.1980). A motion on the pleadings shall not be granted unless the "movant clearly establishes that no material issue of fact remains to be resolved and that [defendant] is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir.1984).

Despite the policy that summary procedures are used sparingly in antitrust litigation where motive and intent are important factors, courts recognize the importance of motions to dismiss since the statutory treble damages remedy may tempt parties and result in vexatious litigation. *T.W. Electrical Serv. v. Pacific Electrical*, No. 86–1646 (9th Cir.1987); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc. et al.*, 637 F.2d 1376 (9th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981); *Franchise Realty Interstate Corp. et al. v. S.F. Local Joint Executive Board of Culinary Workers, et al.*, 542 F.2d 1076, 1082 (9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977).

To overcome a Rule 12(c) motion a complaint must allege facts that if proven would establish each element of each claim. Conclusionary assertions are not accepted as facts. *Lombard's Inc. v. Prince Manufacturing, Inc.*, 753 F.2d 974, 975 (11th Cir.1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). A conclusionary statement without a supporting factual basis cannot withstand a motion to dismiss. *Lombard's, Inc. v. Prince Manufacturing, Inc., supra; Heart Disease Research Foundation v. General Mo-*tors Corp., 463 F.2d 98 (2nd Cir.1972); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *GVF Cannery, Inc. v. California Tomato Growers Assn. Inc.*, 511 F.Supp. 711, 717 (N.D.Cal.1981).

For purposes of Rule 12, well-pleaded allegations of the complaint are accepted as true. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2nd. Cir.1985); *Doleman v. Meiji Mutual Life Ins. Co., supra.*

For purposes of this motion we accept as true the following relevant facts. Defendant retail stores sell souvenir and other products. Defendant tour operators organize tour groups, transport the tourists by bus to defendant retail stores at pre-arranged times, promote these stores to tourists and encourage the tourists to make purchases. Defendant tour operators are paid by defendant retail stores for these acts.

Defendant tour operators refuse to take tourists to vendors such as the Hennegans, who fail or refuse to pay the tour operators. Because the Hennegans refuse to pay the tour operators the tour operators do not bring tourists to their park stand.

### Section 2(c) of the Robinson–Patman Act

■ Defendants' motion on the pleadings is granted with regard to allegations of violation of the Robinson–Patman Act because the complaint alleges facts which constitute services within the meaning of § 2(c) of the Robinson–Patman Act, 15 U.S. C. § 13(c) (hereinafter "The Act").

Section 2(c) provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to any agent, representative, or other intermediary therein where such interme-

diary is acting in fact for or in behalf, or is subject to the direct or indirect control, or any party to such transaction other than the person by whom such compensation is so granted or paid.

The Hennegans urge that defendant tour operators, without performing any legitimate service and without any legitimate reason, deliver tourists to defendant retail stores solely because of improper payments made to the tour operators. These "illegal payments" are made in exchange for benefits which cannot be construed as "services rendered" within the meaning of the Act. The complaint recognizes that defendant tour bus operators transport passengers at pre-arranged times to defendant retail shops, where they are encouraged by the tour bus operators to buy souvenirs. In return, defendant retail stores pay the tour bus operators. The Hennegans characterize this activity as illegal bribery.

In *Rangen, Inc. v. Sterling Nelson & Sons, Inc.*, 351 F.2d 851, 859 (9th Cir.1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966), the Ninth Circuit recognizes that a "payment or grant ... for services rendered in connection with the sale or purchase of goods, wares or merchandise,.... is not forbidden by section 2(c)."

In *Burge v. Bryant Public School District*, 520 F.Supp. 328 (E.D.Ark.1980), *aff'd*, 658 F.2d 611 (8th Cir.1981), the school district received a ten percent commission from a photographer with whom it contracted to photograph students. A rival photographer complained that the commission constituted commercial bribery in violation of Section 2(c).

In granting a motion for summary judgment the court found that the school district performed services for the photographer, namely assisting in organizing the photography shooting schedule, assistance in bookkeeping, assistance in collection of monies and assistance in setting up studio space.

Certainly, these are valuable services rendered by the school district and are of great benefit to the photographer. *Id.*, 520 F.Supp. at 333.

The Hennegans allege that in exchange for payments the defendant tour operators transport tour groups to defendant retail stores at pre-arranged times, and encourage the tourists to purchase goods. These services are not de minimus. *Burge*, 658 F.2d at 612. Without the tour operators bringing tourists to the retail stores the retail stores would either lose business or have to resort to other means to promote their stores. We agree with defendants that the tour bus operators render valuable services to the retail stores.[2]

Antitrust laws were not intended to undermine free enterprise. They were intended to ensure that businesses start out on a fair footing. The Hennegans acknowledge that the tour bus operators would bring tour groups to the Hennegans' stand if they were to pay for this service. This Court will not order defendant tour bus operators to render for free services for which it is being paid by other enterprises.

### Section 3 of the Sherman Act

To state a claim under Section 3 of the Sherman Act, a plaintiff must allege, *inter alia*, facts showing a contract, combination or conspiracy that unreasonably restrains trade. *Cascade Cabinet Co. v. Western Cabinet & Millwork, Inc.*, 710 F.2d 1366, 1373 (9th Cir.1983).

Section 3 of the Sherman Act provides:

Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia, or in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States or foreign nations, is engaged in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and,

---

**2.** The Hennegans must recognize the value of these services, otherwise they would not demand that the tour bus operators provide them with the same benefits.

on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

Sections 3 and 1 of the Sherman Act are identical but for their jurisdictional aspects. Cases construing the substantive provisions of Section 1 are equally applicable for purposes of construing Section 3. *United States v. Standard Oil Co. of California,* 362 F.Supp. 1331 (N.D.Cal.1972) *aff'd,* 412 U.S. 924, 93 S.Ct. 2750, 37 L.Ed.2d 152 (1973); *Norman's on the Waterfront Inc. v. Wheatley,* 317 F.Supp. 247 (D.V.I.1970), *aff'd,* 444 F.2d 1011 (3rd Cir.1971).

As under Section 1 of the Sherman Act,

In order to maintain a successful § 3 action, the contractors must show (1) that there was a contract, combination, or conspiracy, i.e., an agreement or concerted action toward 'a common goal.', *see Monsanto [Co. v. Spray-Rite Service Corp.],* 465 U.S. [752] at 761, 764 [104 S.Ct. 1464, at 1469, 1471, 79 L.Ed.2d 775 (1984)]; *49er Chevrolet [v. General Motors],* 803 F.2d [1463] at 1467 [ (9th Cir. 1986) ], (2) that the agreement 'unreasonably restrains trade, under either a *per se* rule of illegality or a rule of reason analysis'; *see United States v. Topco Assocs.,* 405 U.S. 596, 606–08 [92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515] (1972); *O.S.C. Corp [v. Apple Computer, Inc.],* 792 F.2d [1464] at 1467 [ (9th Cir.1986) ] ... and (3) that the restraint affected commerce.

*Contract, Combination or Conspiracy*

The initial step in an analysis of Section 3 of the Sherman Act is to determine the identity of the alleged conspirators and the content of the alleged conspiracy. Only then can a court determine whether the concerted action unreasonably restrains trade.

The complaint is premised upon the allegation that each of the defendant tour operators refuses to deal with the Hennegans because the Hennegans refuse to pay the defendant tour bus operators for their services.

■ Apart from the conclusionary allegation of a "group boycott" the complaint is devoid of any fact which if proven would establish concert between the defendants. There is no allegation that the tour operators either agreed between themselves or with the defendant retail stores not to deal with the Hennegans or other vendors. In fact, plaintiffs acknowledge that the tour operators are willing to provide them the same services provided to the retail stores if the tour operators are compensated.

In *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986), citing *Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984), the Supreme Court held

[I]f the factual context renders [plaintiffs' antitrust] claim implausible—if the claim is one that simply makes no economic sense—[plaintiff] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary ... [C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy ... To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for a violation of § 1 must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently.

■ The Hennegans need to dispel the possibility that the alleged conspirators acted independently.

Some horizontal group boycotts, that is, boycotts between competitors, are per se violations of § 1. (citations omitted) Before we apply the per se rule, however, a plaintiff must show that the challenged activity 'falls into a category likely to have predominantly anticompetitive effects.' (citations omitted) However, the unilateral refusal by one trader to deal with another is not a group boycott. An agreement, some concerted effort, is required before a group boycott exists.

**308**

(citation omitted). *Supermarket of Homes v. San Fernando Valley Board of Realtors,* 786 F.2d 1400, 1405 (9th Cir.1986).

The Hennegans "have not offered any evidence of 'a conscious commitment' to a common scheme designed to achieve an unlawful objective." *Souza v. Estate of Bishop,* 799 F.2d 1327, 1329 (9th Cir.1986). As in *Souza,* defendants have offered understandable and reasonable business reasons for the challenged conduct. The mere existence of parallel conduct is insufficient to establish concert or conspiracy because independent activity does not violate the Sherman Act. *O.S.C. Corp. v. Apple Computer, Inc.,* 792 F.2d 1464 (9th Cir.1986).

### Unreasonable Restraint of Trade

Even if the Hennegans could get over the threshold showing of a conspiracy, the complaint does not set forth facts that if proven show unreasonable restraint of trade. The Hennegans allege a group boycott. The facts alleged, however, show only that the tour bus operators refuse to provide services to the Hennegans because the Hennegans refuse to pay for the services. There is no allegation that the defendant tour bus operators would not perform the identical services for the Hennegans as they do for defendant retail stores if the Hennegans pay in kind for these services.

This conduct does not constitute an unreasonable restraint of trade. In *Fairdale Farms, Inc. v. Yankee Milk, Inc.,* 715 F.2d 30, 34 (2nd Cir.1983) *cert. denied,* 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 174 (1984) and *Daily Press, Inc. v. United Press International,* 412 F.2d 126, 135 (6th Cir.) *cert. denied,* 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969), the Second and Sixth Circuits recognize that the Sherman Act does not give purchasers the exclusive right to dictate the terms upon which they deal. The antitrust laws are not designed to penalize businesses for refusing to give preferential or favored treatment to one client, so long as a refusal to deal is done independently. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

The Hennegans fail to establish that defendant tour bus operators' refusal to provide free services to the Hennegans unreasonably restrains trade. Defendants' motion for judgment on the pleadings is granted.

IT IS SO ORDERED.